IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JAMES WILKINS                          §
    TDCJ-CID #1261718                §
V.                                     §          C.A. NO. C-04-432
                                       §
COUNTY OF SAN PATRICIO, ET AL.  §

**MEMORANDUM AND RECOMMENDATION**
**ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    In this civil rights action, Texas state prisoner James W. Wilkins, proceeding *pro se* and *in forma pauperis*, is suing San Patricio County ("SPC") and certain SPC officials alleging that they violated his constitutional rights when he was in the custody of the SPC jail ("SPCJ").  He claims that, during his six weeks in the SPCJ, defendants were deliberately indifferent to his serious medical needs, denied him access to the law library, retaliated and discriminated against him, and segregated him from the rest of the population without due process.  See (D.E. 1) (plaintiff's original complaint).  Defendants move for summary judgment to dismiss plaintiff's claims.[1]  (D.E. 33).  Plaintiff has not filed a response in opposition;[2] however, plaintiff previously moved for summary judgment, (D.E. 13), and his summary

_____

[1] Plaintiff filed two additional summary judgment motions, (D.E. 21, 28), seeking default judgment against defendants. Those motions were denied. (D.E. 22, 30). His first summary judgment motion, (D.E. 13), was denied as premature, (D.E. 15), but is considered in the context of this recommendation.

[2] Pursuant to the Order for Service of Process, (D.E. 16), plaintiff had 45 days to file a response to any dispositive motion.  Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

judgment arguments and evidence are considered herein.  For the reasons stated

herein, it is respectfully recommended that defendants' motion for summary

judgment be granted, and that plaintiff's claims be dismissed on the merits.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action

pursuant to 28 U.S.C. § 1331.

## II.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

Plaintiff is presently incarcerated at the Lopez State Jail in Edinburg, Texas,

although his claims involve events that occurred while he was incarcerated at SPCJ.

Plaintiff is suing San Patricio County, SPC Commissioner Nina Trevino, SPC

Commissioner Pedro Rodriguez, and the County Judge, Terry Simpson.

The following facts are not in dispute:

On June 19, 2004, plaintiff was arrested on charges of theft and taken to the

SPCJ.[3]  DSJ[4] Ex. 2.  Plaintiff told the booking officer that he believed he had

---

[3] Plaintiff does not allege that he was a pretrial detainee when in the custody of SPCJ. Pretrial detainees are persons who have been charged with a crime, but not yet tried on the charge, and have a constitutional right to not be punished for a crime for which they have not yet been convicted.  Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  A "detained parolee" is an individual on parole charged with a new crime but not yet convicted, and the Bell standard applies only to the extent that a parolee arrested for a subsequent crime has a due process right to be free from punishment for the subsequent crime until convicted of that crime.  Hamilton v. Lyons, 74 F.3d 99, 106 (5th Cir. 1996).

[4] "DSJ" refers to defendants' motion for summary judgment.  (D.E. 33).  "PS1" refers to plaintiff's first summary judgment motion.  (D.E. 13).  Plaintiff and defendants have both offered copies of grievances filed by plaintiff.  Reference is generally made to defendants' copies for convenience because they are tabbed and labeled whereas plaintiff's exhibits are not identified by a

Hepatitis C, which was then noted in his medical record.  Id.  Plaintiff was placed in C-Block.  DSJ Ex. 70 (Wilison Aff. at 2).

On July 4, 2003, inmates in C-Block filed a grievance requesting that plaintiff be moved from that area because of his alleged Hepatitis C status and his poor hygiene habits.  DSJ Ex. 63.  Plaintiff was moved to A-Block.  DSJ Ex. 70 (Wilison Aff. at 2).

On July 6, 2004, plaintiff submitted a medical request complaining that he had Hepatitis C and that his lower right side had been hurting for eight days.  DSJ Ex. 3.  The jail's physician assistant, Eric Echavarry, instructed the jail's nurse, Mary Coronado, to run a urinalysis to determine if plaintiff did in fact suffer from Hepatitis C.  DSJ Ex. 65 at 1; DSJ Ex. 70 (Wilison Aff. at 4).   Plaintiff was seen in the clinic on July 7, 2004, and it was noted that his urinalysis screen was negative for Hepatitis C.  DSJ Ex. 65 at 1.  During this clinic visit, plaintiff mentioned that he had been treated at a Spohn Hospital Clinic ("Spohn") in Corpus Christi prior to his arrest.  Id.   Nurse Coronado indicated that she would request plaintiff's medical records from Spohn.  Id.

On July 8 and 9, 2004, plaintiff filed grievances complaining that he was segregated in A-Block and not allowed any recreation time.  DSJ Exs. 5, 6.  The

specific number.

3

chief jail administrator, Janet Wilison, responded that plaintiff could now move back to C-Block because she had cleared it with medical staff.  DSJ Ex. 6.

On July 9, 10, and 11, 2004, plaintiff submitted grievances complaining that he had not received his pain medication.  DSJ Exs. 8, 9, 11.  Chief Wilison responded that Nurse Coronado could not provide medication until a doctor had reviewed plaintiff's medical records, and that they were still waiting on his records from Spohn.  DSJ Ex. 9 at 2.

On July 12, 2004, plaintiff complained that he did not receive access to the library.  DSJ Ex. 12.  Chief Wilison responded that Sergeant Gibson would take him that night.  Id. at 2.

On July 13, 2004, Chief Wilison was informed by Mr. Echavarry that plaintiff could have Ibuprofen three times a day for pain.  Consequently, plaintiff began receiving pain medication.  DSJ Ex. 65 at 4.

On July 15, 2004, plaintiff requested to go to the law library.  DSJ Ex. 16. Chief Wilison responded that plaintiff's name would be placed back on the waiting list.  Id.

On July 16, 2004, plaintiff submitted a request to Chief Wilison to become a trustee.  DSJ Ex. 17 at 1.  She told him that the medical staff would not permit an inmate with Hepatitis C to be a trustee because it was a risk to the inmate himself

and to others.  DSJ Ex. 17 at 2.  She stated that such an inmate had worked as a trustee before, and that once it was discovered he had Hepatitis C, the medical staff removed him as a trustee.  Id.  However, Chief Wilison instructed plaintiff to contact the medical staff directly.  DSJ Ex. 17 at 2.

On July 16, 2004, plaintiff filed a grievance complaining about his previous segregation in A-Block.  DSJ Ex. 18.

On July 17, 2004, plaintiff filed a grievance complaining about Chief Wilison's response to his trustee request.  DSJ Ex. 21.  He stated that he did not believe another inmate with Hepatitis C had ever worked as a trustee at SPCJ, and that he believed the denial of his request was based on retaliation or discrimination. Id.  On July 18, 2004, Chief Wilison responded that she relied on medical staff advice when a prospective trustee had a medical condition.  Id.

Because plaintiff continued to complain of right rib cage pain, on July 20, 2004, x-rays were taken.  DSJ Ex. 69.  The x-rays revealed no fracture or other abnormalities.  Id.

By entry dated July 20, 2004, Nurse Coronado noted that plaintiff had written eleven medical grievances complaining that he was not getting the proper medication.  DSJ Ex. 65 at 5.  She called Spohn and learned that he had been seen there twice, on November 6, and November 18, 2003, and had not returned.  Id.

5

She confirmed that his records had been requested and was advised they would be

delivered soon.  Id.

On July 22, 2004, plaintiff complained that he had requested carbon paper on

July 20, 2004, but had still not received it.  DSJ Ex. 26.  He also complained that

four days had passed since he had requested to go to the library, with no response.

Id.  He related that he was "beginning to feel as if I am the victim of retaliation" due

to his filing of grievances.  Id.  Chief Wilison responded:

> Normally we do not issue carbon paper to the
> inmates but I will get some as I do not have any available
> at this time.  No one is retaliating against you sir.  The law
> library stays fairly busy at this time and you have to wait
> until we have the time available.  We also have the
> polycom in the room and there are times medical staff is
> busy using the room also.  Please be patient.  No one is
> denying you anything.

DSJ Ex. 26.

On July 23, 2004, plaintiff was seen by Mr. Echavarry and discussed what

weekly medications he required.  DSJ Ex. 65 at 6.

On July 24, 2004, plaintiff filed a grievance complaining that he had been

subjected to humiliation, embarrassment, and mental anguish when he was moved

from C-Block (general population) to A-Block (segregation) because other inmates

thought he was unclean and possibly HIV-positive.  DSJ Exs. 29, 64.

6

On July 27, 2004, SPCJ received plaintiff's medical records from Spohn. DSJ Ex. 65 at 7.  These records confirmed that plaintiff did *not* have Hepatitis C. Id.  The Spohn records also indicated that plaintiff had been complaining of pain under his right rib cage since November 6, 2003, and that the Spohn physician had opined that the pain might be musculoskeletal.  Id.

On July 28, 2004, plaintiff filed a grievance complaining that he was assigned to A-Block without due process.  DSJ Ex. 41.

On July 28, 2004, he was also seen in the clinic on his request for a more thorough medical examination.  DSJ Ex. 65 at 9.  When he arrived at the clinic, however, he stated that he was not in pain and did not need any assistance.  Id.  He explained that he had been in pain when he wrote the request.  Id.  Plaintiff signed a statement indicating that he refused medical treatment on that date.  DSJ Ex. 65 at 10.

On July 29, 2004, plaintiff filed another complaint concerning his housing in A-Block.  DSJ Ex. 37.

On July 30, 2004, plaintiff complained that he had not been given an inmate handbook and that this was his third request for pen, paper, envelopes, and more grievance forms.  DSJ Ex. 40.  On August 1, 2004, he complained that he had still not received the carbon paper, or been allowed to go to the law library.  DSJ Ex. 44.

7

On August 2, 2004, plaintiff was provided with an inmate handbook, paper, envelopes, pencil, pen, and carbon paper.  DSJ Ex. 40 at 2.

On August 3, 2005, plaintiff wrote to the SPC Commissioners and the County Judge regarding his complaints about SPCJ.  DSJ Ex. 45.

On August 4, 5, 8, and 10, 2004, plaintiff filed grievances complaining about not being allowed to be a trustee.  DSJ Exs. 46, 50, 51, 52, 54, 56.

On August 5, 2004, plaintiff filed another grievance, stating;

> I object to being made to tolerate 23 hours within this cell while 3 inmates who willingly commit a major infraction are allowed to walk around freely within the confines of their cell block, suffering not, the inconvenience of having to relocate.   As I've stated many times over, I just want to be allowed to move around within the confines of "A" block.  If you will allow us to congregate as inmates of a block at recreation, why not within the confines of our living unit.

DSJ Ex. 49.  In a written response dated August 9, 2004, Sheriff Moody indicated that he would check into the matter and see what was going on because he believed plaintiff should be able to move freely upstairs.  Id.

On August 15, 2004, plaintiff submitted an Inmate Request for Law Library. DSJ Ex. 59.  He was taken to the law library that day.  Id.

8

## III.  <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Id.</u> at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence, or evaluate the credibility of witnesses.  <u>See id.</u>  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); <u>see</u> <u>also</u> <u>Cormier v. Pennzoil Exploration & Prod. Co.</u>, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d

547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unverified documents do not constitute proper summary judgment evidence.  See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451 (citations omitted).  "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## IV.  DISCUSSION

### A.     There Is No Liability Against The County Or The Individuals In Their Official Capacity.

Plaintiff sues SPC alleging that SPCJ officials and staff violated his constitutional rights.   He also names as defendants SPC Commissioners Nina Trevino and Pedro Rodriguez,  and County Judge Terry Simpson.  Plaintiff's claims against the individual defendants in their official capacities are essentially claims against SPC.  Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996) (citing Hafer v. Melo, 502 U.S. 21, 23-27 (1992)).

For a municipality to be liable under § 1983, there must be: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). These three elements are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.  See Monell, 436 U.S. at 694.  Consequently, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by

11

municipal employees will almost never trigger liability." <u>Piotrowski</u>, 237 F.3d at 578.  An "official policy" may be either a written policy, or "'a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" <u>Lawson v. Dallas County</u>, 286 F.3d 257, 263 (5th Cir. 2002) (quoting <u>Webster v. City of Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).  There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right.  <u>See</u> <u>id.</u> (citing <u>Piotrowski</u>, 237 F.3d at 578).

In the present case, plaintiff has alleged no facts to support holding the county liable.  He does not allege that an SPC policy, practice, or custom led to the violation of his constitutional rights.  <u>See</u> <u>Burns v. City of Galveston</u>, 905 F.2d 100, 102-03 (5th Cir. 1990).  Furthermore, he has not shown causation.  <u>See</u> <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 404-05 (1997) (constitutional liability may be imposed only where the municipality itself causes the constitutional violation).  Plaintiff has failed to demonstrate that the alleged unconstitutional actions by the SPCJ staff were attributable to an SPC official policy or custom.  Accordingly, it is respectfully recommended that plaintiff's claim against SPC and

against the individuals in their official capacities be dismissed as frivolous and for

failure to state a claim.

**B.   Plaintiff's Claims Against The Individual Defendants In Their Individual Capacities Fail.**

To the extent plaintiff is suing defendants in their individual capacities,

plaintiff fails to allege any specific conduct giving rise to a constitutional violation.

To state a cause of action pursuant to § 1983, "plaintiff must identify defendants

who were either personally involved in the constitutional violation or whose acts

are causally connected to the constitutional violation alleged."  Woods v. Edwards,

51 F.3d 577, 583 (5th Cir. 1995); see also Thompson v. Steele, 709 F.2d 381, 382

(5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause

of action.").  In addition, a supervisory official may not be held liable under § 1983

based on a theory of *respondeat superior* or vicarious liability.  Reimer v. Smith,

663 F.2d 1316, 1323 (5th Cir. 1981); see also Thompson v. Upshur County, 245

F.3d 447, 459 (5th Cir. 2001) ("Under section 1983, supervisory officials are not

liable for the actions of subordinates on any theory of vicarious liability.").  A

supervisory defendant must be either personally involved in the incidents

underlying the claim, "or there must be a causal connection between an act of the

[supervisor] and the constitutional violation sought to be redressed."  Harvey v.

Andrist, 754 F.2d 569, 572 (5th Cir. 1985) (citations omitted).

13

Plaintiff has not alleged that Commissioner Trevino, Commissioner Rodriguez, or County Judge Simpson participated in any of the alleged deprivations.  In fact, the only "involvement" of these individuals is that he sent them a letter on August 3, 2004, complaining about his treatment at SPCJ.   DSJ Ex. 45.  His letter to defendants does not demonstrate personal involvement.  Therefore, it is respectfully recommended that plaintiff's claims against the individual defendants in their individual capacity be dismissed.

**C.    Analysis Of Plaintiff's Claims.**

Even if plaintiff could demonstrate an unconstitutional policy or personal involvement by the defendants, he fails to state a constitutional violation.

### 1.    *Deliberate indifference to serious medical needs.*

Plaintiff claims that he received inadequate medical care while at SPCJ.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the officials acted with deliberate indifference to serious medical needs.  Wilson v. Seiter, 501 U.S. 294, 303 (1991); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam).  Deliberate indifference encompasses more than mere negligence on the part of prison officials.  See Farmer v. Brennan, 511 U.S. 825, 835-36 (1994).  It requires that prison officials be both aware of specific facts from which the

14

inference could be drawn that a serious medical need exists, and then the prison official, perceiving the risk, must deliberately fail to act.  See id. at 837-38.

Furthermore, negligent medical care does not constitute a valid § 1983 claim. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights.  See Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).  Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered.  See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Varnado, 920 F.2d at 321. "Deliberate indifference is an extremely high standard to meet."  Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

The record in this case demonstrates that plaintiff was routinely seen by medical staff and that the medical staff responded to his medical needs.  See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) (per curiam) (medical records of sick calls, examinations, diagnoses and medications can rebut an inmate's allegations of deliberate indifference).  Based on his own self-reporting, plaintiff was treated initially as a Hepatitis C patient and his exposure to other inmates was restricted.  Tests and objective findings later confirmed that he did not have Hepatitis C, and as such, he fails to allege a "serious" medical condition.  He

also complained of right rib-cage pain.  X-rays revealed no fracture or abnormality, and plaintiff was prescribed pain medication for his complaints.  Finally, plaintiff signed a statement that he was refusing medical care for his pain because it no longer existed.  At most, plaintiff's complaints are nothing more than a disagreement with the treatment he received, and are not actionable.  Id.  It is respectfully recommended that this claim be dismissed.

     **2.     *Access to the courts.***

     Plaintiff claims that he was denied access to the courts because he was not given certain supplies when requested, nor permitted to go to the law library at certain times.

     Prisoners have a constitutionally protected right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 360 (1996).  The right encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.  Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (citing Lewis, 518 U.S. at 351).  To show a denial of access to the courts, a plaintiff must demonstrate that he suffered an "actual injury."  Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (per curiam) (citing Lewis, 518 U.S. at 351-54); see also Ruiz v. United States, 160 F.3d 273, 275 (5th Cir.1998) ("without

proving an actual injury, a prisoner cannot prevail on an access-to-the-courts claim.").

In this case, plaintiff has failed to allege or prove that he suffered any prejudice from his alleged lack of adequate access to the law library or to legal supplies. He does not claim, let alone establish, that he was a litigant in any pending legal proceeding. Furthermore, he fails to demonstrate that his position in any such proceeding was prejudiced by the alleged denial of materials and law library access. It is respectfully recommended that this claim be dismissed as frivolous.

### 3.    *Retaliation and trustee status.*

Plaintiff contends that defendants retaliated against him and denied him trustee status because he exercised his right to file grievances.

The Fifth Circuit has noted that "[t]o prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). The inmate must be able to point to a specific constitutional right that has been violated. Jones, 188 F.3d at 325. Moreover, the inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110

F.3d 299, 310 (5th Cir. 1997) (citation omitted).  Conclusory allegations of

retaliation are insufficient.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

"The inmate must produce direct evidence of motivation or, the more probable

scenario, 'allege a chronology of events from which retaliation may plausibly be

inferred.'"  Id. (citation omitted).  Causation requires an inmate to show that but for

the retaliatory motive the adverse action would not have occurred.  McDonald, 132

F.3d at 231.

Plaintiff claims he was a victim of retaliation because he filed numerous

grievances.  However, he fails to establish a chronology of events from which

retaliation can be inferred.  He attributes no retaliatory act to a named defendant.

Although he claims that he was moved to more restricted housing, A-Block, and

denied trustee status because he filed grievances, Chief Wilson explained that these

decisions were based solely on plaintiff's own self-reporting of Hepatitis C.  DSJ

Ex. 70 (Wilison Aff. at 20).  He was later moved again for his own protection when

other inmates complained about his hygiene and were unsure of his medical

condition.  Id.  There is no evidence that plaintiff was punished for exercising his

right to file grievances.  It is respectfully recommended that his claim of retaliation

be dismissed.

### 4.      Failure to protect.

Plaintiff claims that SPCJ officials placed him in danger when they transferred him out of A-Block (segregation) and back to C-Block (general population).

The deliberate indifference standard applies to cases involving protection from violence by other prisoners.  Estelle, 429 U.S. at 104.  A prison official may be held liable under the Eighth Amendment for failure to protect only if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Farmer, 511 U.S. at 847.  There is no Eighth Amendment liability for a prison official's failure to protect an inmate if the official responded reasonably to the risk to inmate health or safety, even if the harm ultimately was not averted.  Johnson v. Johnson, 385 F.3d 503, 525 (5th Cir. 2004) (quoting Farmer, 511 U.S. at 844).

In her affidavit, Chief Wilison states that plaintiff was originally moved off A-Block to C-Block in an attempt to respond to his numerous complaints about being segregated.  DSJ Ex. 70 (Wilison Aff. at 3).  Thereafter, when plaintiff asked another inmate on C-Block to witness one of his grievances, that inmate learned that plaintiff might have Hepatitis C, and told other C-Block inmates.  Id.  The C-Block inmates then filed their own grievance requesting that plaintiff be removed

19

from C-Block.  DSJ Ex. 64.  Chief Wilison then moved plaintiff back to A-Block for his own protection.  DSJ Ex. 70 (Wilison Aff. at 3).  The facts demonstrate that Chief Wilison responded reasonably to all perceived threats to plaintiff's health and safety.  Indeed, her actions were taken to protect plaintiff.  It is respectfully recommended that this claim for failure to protect be dismissed.

### 5. *Due process.*

Plaintiff complains of being placed in segregation without due process.  However, an inmate has no protected liberty interest in his housing assignment, custody status or other privileges.  Sandin v. Conner, 515 U.S. 472, 483 (1995) (due process protections do not attach to mere changes in a prisoner's conditions of confinement, but only to atypical and significant hardships that impinge on the duration of the confinement).   This allegation fails to state a constitutional violation, and it is respectfully recommended that it be dismissed as frivolous and for failure to state a claim.

### 6. *Discrimination.*

Plaintiff claims that he was denied trustee status on the basis of racial discrimination.  This allegation fails to state a constitutional violation because plaintiff has no protected liberty interest in being a jail trustee.  Moreover, the uncontroverted evidence establishes that plaintiff was denied trustee status

because, based on his own self-reporting, it was believed that he had Hepatitis C, and the medical department would not allow him to work as a trustee.  See DSJ Ex. 70 (Wilison Aff. at 2-3).  It is respectfully recommended that this claim be dismissed.

## V.  RECOMMENDATION

Plaintiff fails to establish that SPC had a policy or practice that led to the violation of his constitutional rights, and he has failed to allege any personal involvement on the part of the individual defendants.  Moreover, plaintiff's facts, taken as true, fail to state a claim for deliberate indifference, denial of access to the courts, retaliation, failure to protect, due process, or discrimination.   He has failed to establish that there exists a genuine issue of material fact regarding his claims, and defendants have established that they are entitled to summary judgment as a matter of law.  Accordingly, it is respectfully recommended that defendants' motion for summary judgment, (D.E. 33), be granted and that plaintiff's claims against all defendants be dismissed with prejudice as frivolous and for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1).

Should the Court adopt this recommendation, it is further respectfully recommended that the Clerk be directed to provide copies of this recommendation

and the Court's order to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler Texas, 75702, Attention: Betty Parker, Three-Strikes administrator.

Respectfully submitted this 4th day of November 2005.

_____

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1)(C), and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).